# SONNEMANN v. PHILADELPHIA, BALTIMORE, & WASHINGTON RAILROAD COMPANY.*

---

MASTER AND SERVANT; RAILROADS; NEGLIGENCE.

The engineer of a steam derrick is the servant of a railroad company, and the company is liable for an injury to the employee of an express company, engaged in loading freight for a shipper on the railroad company's cars in its freight yard, caused by the engineer's negligence in operating the derrick, where the derrick was at the time owned by the railroad company, and the engineer was employed and paid by it, and was directed by its yard clerk when and where to place the movable engine attached to the derrick to accommodate shippers, although, by a custom of the railroad company, freight in car-load lots was to be loaded and unloaded by shippers, the derrick was furnished them by the railroad company without charge, and the shippers gave the notice to the engineer to hoist the freight into the car.

No. 2101.   Submitted April 14, 1910.   Decided May 10, 1910.

---

*As to liability of master for injury done by servant to third person in use of dangerous agency placed in his custody, see note to *Galveston, H. & S. A. R. Co.* v. *Currie,* 10 L.R.A. (N.S.) 367.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the court, in an action to recover damages for alleged personal injuries.                                    *Reversed.*

The facts are stated in the opinion.

*Mr. Chapin Brown* and *Mr. John P. Earnest* for the appellant.

*Mr. Frederic D. McKenney, Mr. John S. Flannery,* and *Mr. William Hitz* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The judgment appealed from was entered upon a verdict for defendant, the Philadelphia, Baltimore, & Washington Railway Company, directed by the court, in an action to recover damages for personal injuries.

The testimony for the plaintiff, Ottmar Sonneman, tended to show that he was foreman of a gang of men employed in hauling heavy freight for the Knox Express Company, and loading the same upon defendant's freight cars for shippers. That on May 27, 1907, while loading certain heavy angle irons on a car of defendant he was injured by the negligence of the engineer of a steam derrick used in helping to load the same.

As no question was raised as to the sufficiency of the evidence to warrant the submission of the issue of negligence to the jury, but solely whether the engineer was the servant of the defendant, or a fellow servant of the plaintiff at the time, it is necessary only to give the substance of the testimony relating to the latter. It is this: The Knox Company undertook to haul the iron for one Simon and load it in the car. By the custom of the defendant, freight in car-load lots was to be loaded and unloaded by shippers. But to aid in loading heavy articles, the defendant had, for a series of years, kept a movable engine in

the yard, equipped with derrick and boom, which was furnished without charge. The engineer was employed and paid by defendant, and subject to its discharge only. He was directed by the defendant's yard clerk when and where to place the engine to accommodate shippers in their turn. The shipper secured the freight to the boom, and gave the signals for hoisting and lowering. He did not control the hours of the engineer's labor, or exercise any authority other than giving the necessary signals. The learned trial justice was of the opinion that, for the time being, the engineer became the servant of the Knox Company, and the defendant was not responsible for his negligence.

In determining whether he took a correct view of the law applicable to the facts presented, there is no occasion to review the many cases in which the question has been considered in application to facts more or less analogous. That has been done in a recent decision by the Supreme Court of the United States, which must govern our determination. *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 53 L. ed. 480, 29 Sup. Ct. Rep. 252. The plaintiff in that case was a longshoreman employed by a stevedore in loading a ship with oil for the defendant oil company. He was injured while working in the hold, through the negligent handling of a steam winch. The winch and drum were on the dock, which belonged to the defendant. The stevedore's men did all the work save the operation of the winch. The winchman was in the general employ of the defendant. The tackle and ropes were furnished by the stevedore. The stevedore had agreed to pay defendant $1.50 per thousand for the hoisting. He had no control over the winchman save to determine the hours of labor, and to give the necessary signals to hoist and lower. Applying the law to these facts, it was held that the winchman was the servant of the defendant at the time. Mr. Justice Moody, who delivered the opinion of the court, said (p. 225): "Was the winchman, at the time he negligently failed to observe the signals, engaged in the work of the master stevedore, under his rightful control, or was he rather engaged in the work of the defendant, under its rightful control? We think the latter was the true situation. The winchman was un-

doubtedly in the general employ of the defendant, who selected
him, paid his wages, and had the right to discharge him for in-
competency, misconduct, or any other reason.    In order to re-
lieve the defendant from the results of a legal relation of master
and servant, it must appear that that relation, for the time,
had been suspended, and a new like relation between the winch-
man and the stevedore had been created.

"The evidence in this case does not warrant the conclusion
that this changed relation had come into existence.    For reasons
satisfactory to it, the defendant preferred to do the work of
hoisting itself, and received an agreed compensation for it.    The
power, the winch, the drum, and the winchman were its own.
It did not furnish them, but furnished the work they did to the
stevedore.    That work was done by the defendant, for a price,
as its own work, by and through its own instrumentalities and
servant, under its own control.    Much stress is laid upon the
fact that the winchman obeyed the signals of the gangman, who
represented the master stevedore, in timing the raising and
lowering of the cases of oil.    But when one large general work
is undertaken by different persons, doing distinct parts of the
same undertaking, there must be co-operation and co-ordination,
or there will be chaos.    The giving of signals, under the cir-
cumstances of this case, was not the giving of orders, but of
information, and the obedience to those signals showed co-opera-
tion rather than subordination, and is not enough to show that
there has been a change of masters."

The appellee contends that the opinion in that case shows that
the winchman would have been held to be the servant of the
stevedore, for the time, had it not been for the fact that the oil
company was paid for his services and the use of the machinery.
We think that the conclusion would have been the same had
the oil company, like the defendant in this case, furnished the
instrumentalities without charge.    The essential fact, it seems
to us, is that the defendant, "for reasons satisfactory to it," un-
dertook to do the hoisting itself, with men and machinery main-
tained for the express purpose of co-operating with shippers in
the speedy loading of its cars.    That it received no direct com-

pensation for its part of the work seems immaterial. It would seem to be the duty of a common carrier to receive and load all proper freight tendered to it. Its custom to require this to be done by shippers in car-load lots seems to have been generally acquiesced in, and was doubtless one of the inducements to the lower rate usual in such shipments. As the ordinary shipper could not be expected to keep derricks upon defendant's tracks for loading cars, it is highly probable that agreement to furnish the labor in loading was largely influenced by the action of defendant in supplying the engines. Moreover, it is reasonable to presume that the defendant was interested in the speedy loading of cars and the clearing of its tracks. However this may be, the fact remains that for some reasons satisfactory to it, the defendant hired the engineer, maintained the engine and derrick, controlled their movements and operation, and furnished their services to all shippers when needed. The shipper drove his wagon to the car, the defendant's yard clerk ordered the engine to the proper place, the shipper attached the freight and gave the notice to hoist, and the work proceeded in co-operation for the mutual advantage. As said in the case cited: the defendant did not furnish the engine and engineer, but the work they did.

We are of the opinion that the engineer remained the servant of the defendant, notwithstanding his temporary engagement with the plaintiff; and that it was error to direct a verdict for the defendant. The judgment will, therefore, be reversed, with costs, and the cause remanded for a new trial in conformity with this opinion. *Reversed.*